# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **ALLEN D. JOHNSON** | **CIVIL ACTION NO. 06-0635** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **CITY OF MONROE, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

Pending before the Court are cross-motions for summary judgment filed by Plaintiff Allen D. Johnson ("Johnson") [Doc. No. 14] and Defendant City of Monroe ("the City") [Doc. No. 24]. Johnson filed a motion for partial summary judgment[1] against the City and the American Federation of State, County, and Municipal Employees, Local #2388 ("Local #2388"). Johnson asserts due process claims against the City under the Fourteenth Amendment to the United States Constitution and Louisiana Constitution, art. 1, § 2; violations of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"); and retaliatory discharge under the Family Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA"). Johnson has moved for summary judgment only on his due process and LMRA claims. Johnson claims that he was terminated without procedural due process because he was not given advance notice or an opportunity to be heard prior to his termination and he was denied substantive due process because his conduct did not amount to insubordination or justifiable cause for termination. Johnson also claims that the City breached the collective bargaining agreement ("CBA") and Local #2388 violated its duty of fair representation in violation

---

[1]Johnson moves only for a determination of liability.

1

of § 301 of the LMRA.

The City moves for summary judgment on all Johnson's claims.  The City argues that (1) Johnson was aware that he might be terminated and was given an opportunity to respond to the charges against him, (2) municipal employers are exempted from claims under the LMRA, and (3) Johnson has failed to establish a prima facie case of retaliatory discharge under the FMLA.

Local #2388 did not file an opposition to Johnson's Motion for Summary Judgment or its own motion for summary judgment.

For the following reasons, Johnson's and the City's Motions for Summary Judgment [Doc. Nos. 14 and 24] are GRANTED IN PART AND DENIED IN PART.  Johnson's and the City's Motions for Summary Judgment under the federal and state due process clauses are DENIED.  The City's Motion for Summary Judgment under the LMRA is GRANTED, and Johnson's Motion for Summary Judgment under the LMRA is DENIED.  The City's Motion for Summary Judgment under the FMLA is DENIED.

The Court further finds that Local #2388 is entitled to summary judgment on Johnson's claim of breach of the duty of fair representation.  Johnson is required to show cause, within ten (10) business days of the date of this Ruling and Judgment, why his claim against Local #2388 under the LMRA should not also be dismissed.

I.      FACTS AND PROCEDURAL HISTORY

Johnson has been employed by the City of Monroe, Department of Public Works, since August 10, 1996.  Beginning in 2005, Johnson was employed as a heavy equipment operator for the Sanitation Division.

On October 6, 2005, Johnson was suspended for one (1) week for allegedly sleeping while

at work.  During his suspension, Johnson called his supervisor, Jimmy Simmons ("Simmons"), to request a one-week vacation in order to care for a sick aunt.  Simmons told Johnson to contact Joan Benton ("Benton"), the payroll timekeeper.

On October 13, 2005, Johnson telephoned Benton, and she placed Johnson's call on speaker phone.  Unbeknownst to Johnson, Don Hopkins ("Hopkins"), the Director of the Sanitation Division, was listening to the call.  Benton informed Johnson that Hopkins said he could take the vacation but would be fired upon his return.  Johnson then stated, "to hell with Don Hopkins. . . ." [Doc. No. 15, Exh. 2, ¶ 12].

On October 14, 2005, Johnson returned to work and was instructed to report to Hopkins' office.  Hopkins spoke with Johnson and then fired him.

On the same day, Johnson contacted the President of Local #2388, Robert Jackson ("Jackson"), and requested union representation.  Local #2388 never filed a grievance or represented Johnson.

On April 14, 2006, Johnson filed the instant suit against the City and Local #2388 [Doc. No. 1].

On March 16, 2007, Johnson filed a Motion for Partial Summary Judgment as to Liability [Doc. No. 14] and a memorandum in support [Doc. No. 15].

On April 5 and April 10, 2007, the City filed a memorandum in opposition [Doc. No. 19] and a Motion for Summary Judgment [Doc. No. 24] containing identical arguments.

On April 25, 2007, Johnson filed a response [Doc. Nos. 28 & 29].

3

## II.    LAW AND ANALYSIS

### A.    Summary Judgment Standard of Review

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact.  Topalian v. Ehrmann, 954 F.2d 1125, 1132 (5th Cir. 1992).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  Id.

If the moving party can meet its initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial.  Norman v. Apache Corp., 19 F.3d 1017, 1023 (5th Cir. 1994).  In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. Anderson, 477 U.S. at 255.

A motion for summary judgment cannot be granted simply because there is no opposition. Unless the moving party shows there are no genuine issues as to any material fact and that it is entitled to judgment as a matter of law, the court may not grant the unopposed motion, regardless of whether any response was filed.  *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995).

### B.    Procedural Due Process Under the Fourteenth Amendment

To state a violation of procedural due process under the Fourteenth Amendment, a plaintiff must show that he has been deprived of a protected property interest.  See Board of Regents of State

4

Colleges v. Roth, 408 U.S. 564, 569-70 (1972).  Once it is determined that a plaintiff has a protected interest, the Court must determine whether the plaintiff received constitutionally sufficient process. See Samuel v. Holmes, 138 F.3d 173, 177 (5th Cir. 1998).   Under the CBA, Johnson had a constitutionally-protected property interest in continued employment and could only be terminated for "cause."[2]  Before terminating Johnson, the City was required to provide oral or written notice of the charges against him, an explanation of its evidence, and an opportunity for Johnson to present his side of the story.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985).[3]

Johnson claims that he was not provided with notice or the reasons for his termination or given an opportunity to rebut or respond to the charges.  Johnson describes the termination meeting as follows:

> [w]hen I arrived at Mr. Hopkins' office, Mr. Hopkins briefly addressed me and said 'to hell with me, huh.'  I asked him what he was talking about.  Hopkins said words to the effect of 'you know what I'm talking about.'  I said that I did not tell Hopkins that.  Hopkins' response was that they told me you said that.  Mr. Hopkins then fired me on the spot.

[Doc. No. 15, Exh. 2, ¶ 14].  Johnson also argues that the City, in its answers to interrogatories,

---

[2]In Louisiana, "a legislative or regulatory restraint on a public entity's termination authority" establishes a right to continued employment.  Cabrol v. Town of Youngsville, 106 F.3d 101, 106 (5th Cir. 1997) (citing La. Civ. Code art. 2747).  The CBA was adopted by a local ordinance on June 27, 2000, No. 10,056 [Doc. No. 15, Attach. 1, p. 1], and the CBA provides that the City may terminate an employee "for cause."  [Doc. No. 15, Exh. 1, p. 3].

[3]Because the City has a significant interest in making administrative decisions with a reasonable degree of discretion, the required pre-termination process is minimal.  See Williams v. Texas Tech Univ. Health Sciences Ctr., 6 F.3d 290, 293 (5th Cir. 1993).  In such circumstances, "[a] brief pre-termination hearing is satisfactory so long as it is coupled with more formal post-termination proceedings."  Loudermill, 470 U.S. at 546.  In this case, the CBA afforded Johnson a three-step process to contest the validity of his termination, including a hearing before the Grievance Committee.  [Doc. No. 15, Attach. 1, pp. 6-7].

admits that Johnson was not provided with notice or an opportunity to respond.[4]  Additionally, Hopkins testified at his deposition that he did not inform Johnson that he was going to be fired prior to the termination meeting.  [Doc. No. 28, Exh. 3, p. 31, lines 11-17].  Although Hopkins has since averred otherwise, Johnson argues that this fails to raise a genuine issue of material fact.  See Doe ex re. v. Dallas Indep. Sch. Dist., 220 F.3d 380, 386 (5th Cir. 2000) ("a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment.") (citing references omitted).

The City responds that Johnson admits he was informed that he was in danger of being terminated and why he was in trouble the day before he was terminated.  In his affidavit, Johnson states that "Joan Benton . . . informed me that Don Hopkins had said that I could take the vacation but that I would be fired upon my return to work." [Doc. No. 15, Exh. 2, ¶ 12].  The City also argues that Hopkins' affidavit testimony shows that Johnson was given an adequate opportunity to respond:

> [t]he meeting with [Johnson] took approximately twenty minutes. [I] asked Mr. Johnson several times to explain how he could work for a supervisor if he had no respect for that supervisor.  Mr. Johnson never responded, showed no remorse for his actions, and offered no explanation for what he had done.

[Doc. No. 24, Exh. F, ¶ 3].  Finally, the City argues that Johnson "waived" his due process rights by failing to take advantage of the City's post-termination process.  See Mix v. Univ. of New Orleans,

---

[4]Interrogatory No.7:   Please state whether Allen D. Johnson was provided with notice of the reason or reasons for the proposed termination of his employment by the City of Monroe prior to date and time of this termination.

Answer:   No.  Mr. Johnson was terminated immediately following his subordination.

[Doc. No. 28, Exh. 2, pp. 4-5].

609 So.2d 958 (La. App. 4 Cir. 1992); see also Wall v. Tulane Univ., 499 So.2d 375 (La. App. 4 Cir. 1986).

Exhaustion of post-termination remedies is not a defense to Johnson's claim that the pre-termination process was inadequate.  Johnson is only barred from questioning the adequacy of the post-termination process.  See, e.g., Myrick v. City of Dallas, 810 F.2d 1382, 1388 (5th Cir. 1987).[5] In terms of notice, the City claims that Johnson knew he was going to be terminated, but Hopkins averred that he had no intention of terminating Johnson when the meeting began [Doc. No. 24, Exh. F, ¶ 3], and Johnson was not aware that he was going to be terminated for insubordination until his meeting with Hopkins.  While the termination meeting itself could have provided adequate notice[6], it is not clear from Johnson's or Hopkins' accounts whether Hopkins gave Johnson notice of the proposed dismissal during this meeting.  Accordingly, the Court finds that Johnson has raised a genuine issue of material fact whether he was provided with notice.

There is also conflicting evidence whether Johnson was given an opportunity to respond during his meeting with Hopkins.  According to Johnson, Hopkins confronted Johnson with his statement, but did not give him an adequate opportunity to explain or offer mitigating evidence.  The

---

[5]Additionally, the cases cited by the City for the proposition that Johnson waived his due process rights and was converted to an at-will employee are not on point.  See Mix, 609 So.2d at 964 (holding that the university's grievance procedure did not create any contractual rights in favor of the employee, and, consequently, a determination of whether those procedures were properly followed was irrelevant); see also Wall, 499 So.2d at 375-76 (holding that the university's staff handbook was not part of the plaintiff's employment contract).

[6]See Browning v. Odessa, 990 F.2d 842, 844-45 (5th Cir. 1993) (a 30-minute meeting, in which the plaintiff was given notice of the proposed dismissal, informed of the reasons for that dismissal, and given an opportunity to respond, complied with due process when a full evidentiary post-termination hearing was available); cf. Samuel, 138 F.3d at 178-79 (the plaintiff stated a due process violation when he was notified that he was going to be terminated twenty minutes before the meeting).

City claims that Johnson admits he was given an opportunity to respond, but the City stated just the opposite in its answers to interrogatories.[7]  Hopkins avers that the conversation lasted 20 minutes; however, the City admitted in its answers to interrogatories that Johnson was terminated "immediately following his insubordination." [Doc. No. 28, Exh. 2, p. 4].  Based on these conflicts, the Court finds that Johnson has raised a genuine issue of material fact whether he was given a meaningful opportunity, if any, to respond.

The City's and Johnson's Motions for Summary Judgment on the procedural due process claim are DENIED.

**C.    Substantive Due Process Under the Fourteenth Amendment**

To state a violation of substantive due process under the Fourteenth Amendment, "the plaintiff must show. . .  (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." Harrington v. Harris, 118 F.3d 359, 368 (5th Cir. 1997) (quoting Moulton v. City of Beaumont, 991 F.2d 227, 230 (5th Cir. 1993)).  Having determined that Johnson had a constitutionally-protected interest, he must show that

---

[7]Interrogatory No. 10:      Please state whether Allen D. Johnson was afforded the opportunity to respond to the reasons for the proposed termination at any time prior to the date and time of the termination.

Answer:                              No.

Interrogatory No. 11:       Please state whether Allen D. Johnson was afforded the opportunity to provide mitigating facts and circumstances in defense of the proposed termination at any time prior to the date and time of the termination.

Answer:                              No.

[Doc. No. 28, Exh. 2, pp. 4-5]

the termination decision "[wa]s so arbitrary and capricious as to be irrational."  Neuwirth v. Louisiana State Bd. of Dentistry, 845 F.2d 553, 558 (5th Cir. 1988).

Johnson claims that the City acted arbitrarily and capriciously by terminating him without sufficient cause.  Johnson argues that the City of Monroe Employee Handbook ("Handbook") constitutes a binding employment contract, and the appropriate penalty was a written warning for making a "false, vicious, or malicious statement[] about any employee of the City."  [Doc. No. 15, Exh. 5, p. 5].  Further, Johnson argues that his statement "to hell with Don Hopkins" does not constitute insubordination; he was not aware that Hopkins was listening to the call, and, therefore, did not refuse to obey a lawful order nor direct disrespectful or abusive language toward a supervisor.[8]

The City responds that the Handbook specifically states that it "is not a contract of employment" and has not been adopted by local ordinance.  [Doc. No. 24, Exh. F, p. 25 of Handbook].  Therefore, the disciplinary procedures are permissive, not mandatory.  The City also asserts that the provisions of the Handbook were not violated.

The parties have not adequately addressed whether the Handbook was incorporated into the CBA.  See Kerryville, 709 F.2d at 920 (where a written policy outside the CBA is enforced by the employer and accepted by the union, the policy is incorporated into the CBA) (citing Sanderson v. Ford Motor Co., 483 F.2d 102 (5th Cir. 1973)).  However, the Court does not need to resolve whether the Handbook is binding, as the parties do not dispute that an employee may be discharged for

---

[8]Even if his statement constituted insubordination, Johnson argues that it was provoked. See NLRB v. Mueller Brass Co., 501 F.2d 680, 685-86 (5th Cir. 1974) (an employer cannot provoke an employee into committing a spontaneous outburst and then rely on this act as insubordination).  However, the provoked insubordination doctrine applies to cases under section 8 of the NLRA, under which the City is an exempted employer.  See 29 U.S.C. § 152(2).

insubordination.

While some wrongful acts constitute just cause per se, "it is for the trier of fact to weigh evidence of an employee's misconduct against proof of any mitigating circumstances which might tend to negate a finding of 'just cause.'"  Kerryville, 709 F.2d at 920 n.4 (citing Nunez v. Superior Oil Co., 572 F.2d 1119 (5th Cir.1978)).  Therefore, "[t]he question of what a reasonable person might consider just cause should be entrusted to the jury."  Id.  The parties do not dispute that Johnson said "to hell with Hopkins."  However, neither the CBA nor the Handbook define what constitutes "cause" or "insubordination."  In this case, the City has not demonstrated that a single instance of disrespectful language constitutes insubordination per se.  The City might argue to the jury that termination was justified because Johnson was a problematic employee, failed to apologize for his statement, and Hopkins could not adequately supervise a disrespectful employee.  On the other hand, Johnson claims that other employees have used swear words without being terminated, he was not aware that Hopkins was listening, and he uttered the statement in the heat of the moment.  A reasonable juror might conclude that progressive discipline, not termination, was warranted.

The City's and Johnson's Motions for Summary Judgment on the substantive due process claim are DENIED.  Whether Johnson's statement constitutes cause for termination is a question of fact for the jury.

**D.     Due Process under Louisiana Constitution, art. 1, § 2**

Johnson also asserts violations of due process under the Louisiana Constitution, art. 1, § 2. See La. Const. art. 1, § 2 ("No person shall be deprived of life, liberty, or property, except by due process of law.").  The scope of protection under the Louisiana Constitution parallels the Fourteenth Amendment to the United States Constitution.  See Giddens v. City of Shreveport, 901 F. Supp.

1170, 1177 (W.D. La. 1995) (citing Delta Bank & Trust Co. v Lassiter, 383 So. 2d 330, 334 (La. 1980); Parker v. French Market Corp., 615 So. 2d 1347, 1351 (La. 1993)).  For the same reasons stated with respect to Johnson's federal due process claims, the City's and Johnson's Motions for Summary Judgment under the Louisiana Constitution are DENIED.

###        E.        LMRA

Johnson claims that the City and Local #2388 violated § 301 of the LMRA.  Johnson argues that § 301 of the LMRA applies to local governments directly or under the federal court's authority to "fashion a federal common law of labor [relations]."  [Doc. No. 28, p. 12].

The City responds that it is exempt from suits under the LMRA.  As an employee of a State or political subdivision, Johnson is not an "employee" and the City is not an "employer" within the meaning of the LMRA.  See 29 U.S.C. § 142(3) (Under the LMRA, "[t]he terms . . . 'employer' [and] 'employee' . . . shall have the same meaning as when used in the National Labor Relations Act ("NLRA")]."); see also 29 U.S.C. § 152(3) ("[t]he term 'employee' . . . shall not include any individual . . . employed by . . . any other person who is not an employer as herein defined."); 29 U.S.C. § 152(2) ("[t]he term 'employer' . . . shall not include . . . any State or political subdivision thereof. . . ."); Police Dep't of Chicago v. Mosley, 408 U.S. 92, 102 n.9 (1972) ("the [NLRA] specifically exempts States and subdivisions. . . and. . . cities. . . from the definition of 'employer' within the Act.") (citing 29 U.S.C. § 152)).

While federal courts are entitled to develop federal common law principles in order to adjudicate claims properly asserted under § 301, federal courts cannot create a cause of action against a municipal employer and union when such claims are clearly exempted from § 301 coverage.  See Hawaiian Airlines v. Norris, 512 U.S. 246, 260 n.7 (1994) (quoting Textile Workers v. Lincoln Mills

of Ala., 353 U.S. 448, 451 (1957) ("Section 301(a) provides federal-court jurisdiction over controversies involving CBAs and 'authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements.'") see also Smith v. Kerryville Bus Co., 709 F.2d 914, 920 (5th Cir. 1985) (the court applied "industrial common law" to determine whether the employee handbook was part of the CBA); Livadas v. Bradshaw, 512 U.S. 107, 121-122 (1994) (the court recognized the power of the federal courts to develop "federal common-law rules of decision" under § 301, including preemption of state law claims).  Because the City is exempted from the LMRA, the Court lacks subject matter jurisdiction over Johnson's LMRA claims against the City. See Stinson v. Delaware River Port Auth., 935 F. Supp. 531, 536-539 (D.N.J. 1996) (granting summary judgment to the employer because the employer was a "political subdivision" of the state) (citing Jackson v. Temple Univ. of the Commonwealth System of Higher Educ., 721 F.2d 931, 933-34 (3rd Cir. 1983)).

The City's Motion for Summary Judgment is GRANTED, and Johnson's Motion for Summary Judgment against the City is DENIED on the LMRA claim.

The Court may sua sponte dismiss a complaint for failure to state a claim provided that the adversely affected party is provided with notice and an opportunity to respond.  See Wachtler v. County of Herkimer, 35 F.3d 77, 82 (5th Cir. 1994) (citing references omitted).  A union that represents individuals who work for a State or political subdivision "does not represent 'employees' for purposes of the LMRA."  See Plummer v. Chester Hous. Auth., No. 94-4777, 1994 U.S. Dist. LEXIS 17744, at *6 (E.D. Pa. Dec. 9, 1994) (dismissing the plaintiff's claims against the union under § 301 because the employer qualified for the political subdivision exemption) (citing Manfredi v. Hazleton City Auth., Water Dep't, 793 F.2d 101, 104 (3rd Cir.

1986)).  Johnson is directed to show cause, within ten (10) business days from the date of this Ruling and Judgment, why his LMRA claim against Local #2388 should not also be dismissed for lack of subject matter jurisdiction.

### D.    FMLA

The City claims that Johnson failed to establish a prima facie case of retaliatory discharge under the FMLA.  See Chaffin v. John H. Carter Co., Inc., 179 F.3d 316, 320 (5th Cir. 1999). The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period. . . [i]n order to care for the spouse . . . of the employee, if such spouse . . . has a serious health condition."  29 U.S.C. § 2612(a)(1)(C).  The FMLA proscribes discriminating against an employee for asserting his rights under the FMLA, including basing an adverse employment action on an employee's use of leave.  See Richardson v. Monitronics Int'l, Inc., 434 F.3d 327, 335 (5th Cir. 2005).  To establish a prima facie case of retaliation, Johnson must demonstrate that (1) he is protected under the FMLA; (2) he suffered an adverse employment decision; and (3) the adverse employment action was taken because he sought protection under the FMLA.  See Hunt v. Rapides, Healthcare Sys., 277 F.3d 757, 768 (5th Cir. 2001).

Johnson claims that he has established a prima facie case of retaliatory discharge. Johnson argues that he is protected under the FMLA for taking leave to care for his wife in February of 2005 and requesting leave to care for his aunt on October 13, 2005.  Johnson suffered an adverse employment decision when he was terminated on October 14, 2005.  See, e.g., Watts v. Kroger Co., 170 F.3d 505, 512 (5th Cir. 1999).  As evidence of a causal connection, Johnson argues that he was suspended for "excessive absenteeism," his supervisors expressed

annoyance with his use of leave[9], he was threatened with termination for taking leave the day before he was terminated, and there is a close "temporal proximity" between his request for leave on October 13, 2005, and termination on October 14, 2005.

The City argues that Hopkins and the City's Human Resources Department allowed and facilitated Johnson's FMLA leave, and, therefore, Johnson cannot support the inference that he was terminated for taking such leave.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" by identifying portions of the record which highlight the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). "[E]ven when the non-movant bears the burden of proof at trial, 'simply filing a summary judgment motion does not immediately compel the party opposing the motion to come forward with evidence demonstrating material issues of fact as to every element of [his] case.'" Ashe v. Corley, 992 F.2d 540, 543 (5th Cir. 1993) (quoting Russ v. Int'l Paper Co., 943 F.2d 589, 591 (5th Cir. 1991) (per curiam)). The fact that the City allowed Johnson to take FMLA leave in the past, alone, does not demonstrate that there are no genuine issues of material fact regarding Johnson's prima facie case of retaliation. Accordingly, the Court finds that the City has failed to meet its initial burden on summary judgment.

The City's Motion for Summary Judgment on the FMLA claim is DENIED.

---

[9]Stanley Grayson, a fellow employee, declared that "I was present when [John Smith and Jimmy Simmons] said in my presence that if Allen Johnson missed any more work that they would fire him." [Doc. No. 28, Exh. 9, § 6].

**III.     CONCLUSION**

For the foregoing reasons, Johnson's and the City's Motions for Summary Judgment [Doc. Nos. 14 and 24] are GRANTED IN PART AND DENIED IN PART.  Johnson's and the City's Motions for Summary Judgment under the federal and state due process clauses are DENIED.  The City's Motion for Summary Judgment under the LMRA is GRANTED, and Johnson's Motion for Summary Judgment under the LMRA is DENIED.  The City's Motion for Summary Judgment under the FMLA is DENIED.   Additionally, Johnson is required to show cause, within ten (10) business days of the date of this Ruling and Judgment, why his claim against Local #2388 under the LMRA should not also be dismissed.

MONROE, LOUISIANA, this 21st day of May, 2007.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE